UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
HARRY C. PERRY, JR.,          )
                              )
          Plaintiff,          )
                              )
          v.                  )        Civil Action No. 09-1368 (RWR)
                              )
SAM SCHOLAR,                  )
                              )
          Defendant.          )
_____)
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Harry Perry, Jr. filed a one-count complaint against Sam Scholar seeking damages for wrongful involvement in litigation.  Scholar moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Perry's complaint, arguing that Perry failed to state a claim and filed this action untimely.  Because Perry has sufficiently alleged a claim of tortious involvement in litigation, and because there is a factual dispute about when Perry was aware of his claim against Scholar, Scholar's motion to dismiss will be denied.

## BACKGROUND

Between 1986 and 2005, Perry, an accountant, served as a paid plan administrator of the Plasterers' Local Union No. 96 Pension Plan ("the Plan").  During the same time period, Scholar was an attorney who served as counsel to the Plan.  (Compl. ¶¶ 1-2.)  As the plan administrator, Perry provided organizational and administrative support to the Trustees of the Plan and

implemented their decisions regarding administering the Plan and investing Plan assets.  (<u>Id.</u> ¶ 6.)  According to Perry, "[f]rom time to time, various legal questions required the advice of . . .  Scholar, who issued opinions, prepared resolutions of the Board of Trustees of the Plan and provided advice to the Trustees and to [Perry] both orally and in writing."  (<u>Id.</u>)  Perry alleges that Scholar provided incorrect legal advice to "Plan trustees and to [Perry] in several respects," including advising the Trustees of the Plan that they were allowed to "return to certain contractors who had employed Plan participants a portion of the funds initially credited to those participants when it was determined that the Plan participants were not vested pursuant to the Plan's provisions."  (<u>Id.</u> ¶ 7.)  Perry questioned Scholar about that advice, but Scholar did not change his opinion, and the Trustees returned to certain employers approximately $130,000 of contributions from the Plan.  (<u>Id.</u>)  Perry further alleges that Scholar failed to advise him or the Plan trustees that they had a duty to diversify the investment of Plan assets, causing them to limit their investment of Plan assets to only certificates of deposit and treasury bills.  In addition, Perry alleges that Scholar failed to advise the Plan's Trustees about their duties to hold regular meetings and to maintain minutes of those meetings.  (<u>Id.</u>)

On February 9, 2006, the Plan filed suit against Perry, Scholar, and other defendants in a case titled <u>Plasterers Local Union No. 96 Pension Plan v. Harold Perry et al</u>., Civil Action No. 06-338 (D. Md. 2006) ("Maryland litigation"), seeking damages for breach of fiduciary duty and legal malpractice.  (<u>Id.</u> ¶¶ 7, 11.)  Perry responded in that case on March 3, 2006.  (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") Ex. 3.)  Perry filed this action against Scholar on July 23, 2009, arguing that Scholar was negligent by giving the legal advice described above, and that as a result of Scholar's negligence Perry was forced to spend $168,989 defending himself in the Maryland litigation. (<u>Id.</u> ¶¶ 9-14.)

Scholar has moved to dismiss Perry's complaint, arguing that Perry failed to plead a cause of action because Perry "does not suggest that he had an attorney-client relationship with Mr. Scholar," and thus cannot show that Scholar owed him a duty. (Def.'s Mem. at 1, 4-7.)  Scholar also argues that Perry's claim is barred by the applicable statute of limitations.  (<u>Id.</u> at 8.)

DISCUSSION

A complaint can be dismissed under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, acceptable as true,
> to "state a claim to relief that is plausible on its
> face."  A claim has facial plausibility when the

        plaintiff pleads factual content that allows the court
        to draw the reasonable inference that the defendant is
        liable for the misconduct alleged.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The

complaint must be construed in the light most favorable to the

plaintiff and "the court must assume the truth of all

well-pleaded allegations."  Warren v. District of Columbia, 353

F.3d 36, 39 (D.C. Cir. 2004).  If a plaintiff fails to allege

sufficient facts to support a claim, that claim must be

dismissed.  See Twombly, 550 U.S. at 555-556.  It is not

necessary for a plaintiff to plead all elements of his prima

facie case in the complaint, Swierkiewicz v. Sorema N.A., 534

U.S. 506, 511 (2002), or to "plead law or match facts to every

element of a legal theory."  Krieger v. Fadely, 211 F.3d 134, 136

(D.C. Cir. 2000).  A complaint should contain enough factual heft

to show an entitlement to relief.  Twombly, 550 U.S. at 557.

That is, a complaint is required to plead "only enough facts to

[nudge] a claim to relief . . . across the line from conceivable

to plausible[.]"  Id. at 570.  "Determining whether a complaint

states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw

on its judicial experience and common sense."  Iqbal, 129 S. Ct.

at 1950.

I.   DUTY

Scholar argues that Perry's claim for wrongful involvement in litigation is insufficient because his allegations of duty lack sufficient factual support, and are instead hollow legal assertions.  Under the common law of the District of Columbia,[1]

> where the plaintiff seeks in a separate action to recover attorney [sic] fees incurred by him in earlier litigation with a third person arising out of the tortious act of the defendant, it has been held that if the natural and proximate consequences of the defendant's tortious act were to involve the plaintiff in litigation with a third person, reasonable compensation for attorney's fees incurred by the plaintiff may be recovered as damages against the author of the tortious act.

Brem v. United States Fidelity & Guaranty Co., 206 A.2d 404, 407 (D.C. 1965); see also Answering Service, Inc. v. Egan, 785 F.2d 1084, 1086 (D.C. Cir. 1986) (quoting Biddle v. Chatel, 421 A.2d 3, 7 (D.C. 1980)).  The essential elements that must be established for this claim are: "'(1) the plaintiff must have incurred the fees in the course of prior litigation, (2) ordinarily that litigation must have occurred between the plaintiff and the third party who is not the defendant in the present action, and (3) the plaintiff must have become involved in the underlying litigation as a consequence of the defendant's

---

[1] Perry asserts and Scholar does not contest that District of Columbia law governs his claim.  A court may base its analysis upon such concessions by parties.  Jacobsen v. Oliver, 555 F. Supp. 2d 72, 77 (D.D.C. 2007) (citing CSX Transp., Inc. v. Commercial Union Ins. Co., 82 F.3d 478, 482-83 (D.C. Cir. 1996)).

tortious act.'" <u>Nepera Chem. v. Sea-Land Serv.</u>, 794 F.2d 688, 697 n.65 (D.C. Cir. 1986) (quoting <u>Auxier v. Kraisel</u>, 466 A.2d 416, 420 (D.C. 1983)). A plaintiff can have no claim against a defendant for wrongful involvement in litigation if the plaintiff is found liable for any portion of the underlying litigation. <u>See</u> <u>Answering Service</u>, 785 F.2d at 1087 (stating that "any independent liability of Answering Service for the tortious actions [in the underlying litigation] would defeat its claim for wrongful involvement in litigation") (citing <u>Safeway Stores, Inc. v. Chamberlain Protective Services, Inc.</u>, 451 A.2d 66, 73 (D.C. 1982)). In addition, "the tort of wrongful involvement in litigation is a tort like any other tort - - all traditional tort concepts apply," including that the plaintiff cannot recover damages unless he establishes that the defendant owed him a duty. <u>Answering Service</u>, 785 F.2d at 1088.

Here, Perry sufficiently alleges the elements required for tortious involvement with litigation. Perry alleges that in the course of his defense of the Maryland litigation, he incurred $168,989 in legal fees and expenses as a result of Scholar's negligent legal advice. (Compl. ¶ 13.) Perry asserts that as the Plan administrator, he relied and was entitled to rely on Scholar's legal advice. (<u>Id.</u> ¶¶ 6, 9.) That combined with the specific advice Perry alleges as having been wrongful presents enough factual heft to fully state a claim construed to allege

that Scholar owed Perry a duty not to provide legal advice
regarding the administration of the Plan in a negligent manner.
See Wilson v. Prudential Financial, Civil Action No. 03-2313
(RMU), 2004 WL 2451412, at *3-4 (D.D.C. October 18, 2004)
(listing the elements of a claim for negligence under D.C. law,
then stating that "[a]lthough the plaintiff need not plead each
of these elements in his complaint to survive a motion to
dismiss, he must at least present facts to demonstrate that
negligence provides the appropriate remedy for his grievance");
United States v. Espy, 145 F.3d 1369, 1371 (D.C. Cir. 1998)
(finding that a statute imposed "a host of tasks that fit
comfortably within the definition of 'duty'" despite the fact
that the statute did not use that specific term, and defining
duty as "something that one is expected or required to do by
moral or legal obligation"); see also Morgan Stanley & Co. v. JP
Morgan Chase Bank, N.A., 645 F. Supp. 2d 248, 255 (S.D.N.Y. 2009)
(stating that "[d]uty, in negligence cases, may be defined as an
obligation, to which the law will give recognition and effect, to
conform to a particular standard of conduct toward another").

Scholar argues that Perry's claim is controverted by the
fact that Perry was dismissed from the Maryland litigation
because the court in that case held that his relationship to the
Plan was "ministerial in nature." (Def.'s Mem. at 2-3.)
According to Scholar, that ruling means that Scholar did not have

a lawyer-client relationship with Perry because both Scholar and Perry were independent, third-party service providers to the Plan. (Id.) Scholar, citing Clark v. Feder Semo & Bard, P.C., 634 F. Supp. 2d 99 (D.D.C. 2009), argues that under District of Columbia law, a legal malpractice claim against an attorney requires the existence of an attorney-client relationship. (Def.'s Mem. at 5-7.) However, the elements necessary to bring a claim of legal malpractice do not govern an analysis of Perry's complaint, which alleges a claim against Scholar for tortious involvement with litigation, a tort with elements different from those of a legal malpractice claim. Scholar does not provide authority for the proposition that a claim alleging tortious involvement with litigation against an attorney requires the plaintiff to allege that he had an attorney-client relationship with the defendant. Nor does Scholar demonstrate how the allegation that Perry relied upon Scholar's specified legal opinions rendered to Plan trustees and Perry does not adequately allege factually Scholar's duty to not provide negligent advice. Therefore, Perry has alleged sufficient facts, accepted as true, to state a claim for relief that is plausible on its face.

II. LIMITATIONS

Scholar argues that Perry's claim should be dismissed because it was filed after the end of the applicable three-year

limitations period.[2]  He claims the period began in February or March of 2006 at the inception of the Maryland litigation, while Perry argues the period began in July of 2009 when he was exonerated in the Maryland litigation.

"A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint." Turner v. Afro-American Newspaper Co., 572 F. Supp. 2d 71, 72 (D.D.C. 2008) (quoting DePippo v. Chertoff, 453 F. Supp. 2d 30, 33 (D.D.C. 2006)).  "A court should grant a pre-discovery motion to dismiss on limitations grounds 'only if the complaint on its face is conclusively time-barred,' and the parties do not dispute when the limitations period began." Turner, 572 F. Supp. 2d at 72 (quoting Depippo, 453 F. Supp. 2d at 33).

"Generally, under D.C. Code § 12-301, a cause of action can be brought within the given time period from when 'the time the right to maintain the action accrues.'" Hunt v. DePuy Orthopaedics, Inc., 636 F. Supp. 2d 23, 28 (D.D.C. 2009) (quoting Capitol Place I Assocs. L.P. v. George Hyman Constr. Co., 672 A.2d 194, 198 (D.C. 1996)).  "In ordinary negligence actions, a cause of action accrues for statute of limitations purposes at the time the injury actually occurs." Knight v. Furlow, 553 A.2d

---

[2] Both parties accept that under D.C. Code § 12-301, the applicable limitations period is three years.  (See Def.'s Mem. at 8; Pl's Opp'n at 7-8.)

1232, 1234 (D.C. 1989). "However, in cases where the relationship between the fact of injury and some tortious conduct is obscure at the time of injury, this court has applied the 'discovery rule' to determine when the statute of limitations begins to run." Id., citing Bussineau v. President & Directors of Georgetown College, 518 A.2d 423, 425-26 (D.C. 1986)). "Under this rule, a cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." Knight, 553 A.2d at 1234; see also Wagner v. Sellinger, 847 A.2d 1151, 1154 (D.C. 2004) (stating that a "plaintiff need not be fully informed about the injury for the statute to begin running; [he] need only have some knowledge of some injury").

Here, Perry plausibly argues that the relationship between the fact of injury and some tortious conduct was obscure when he first hired a lawyer to defend him in the Maryland litigation because the nature of Scholar's role in causing Perry to be involved in the Maryland litigation did not emerge solely or even chiefly from the complaint in the Maryland litigation, but instead emerged "from the facts as developed in discovery in that case." (Pl.'s Opp'n at 9.) Further, Perry points out that "[i]t was not until April 23, 2007 that discovery proceedings initiated following the filing of initial disclosures," and claims that

only after the beginning of discovery did he understand Scholar's role in the events causing the Maryland litigation, the nature of his advice and the problems associated with it.  (Id. at 9-10.) Scholar disagrees, and argues that under the discovery rule as interpreted in Knight[3], Perry was aware of his claim on either February 9, 2006, the date that the Plan filed its complaint in the Maryland litigation, or on March 3, 3006, the date that Perry filed his initial pleading in the Maryland litigation (Def.'s Mem. at 3, 8-10), and that his complaint filed in this action on July 23, 2009 was untimely.

The parties have a factual dispute about when Perry first knew, or by the exercise of reasonable diligence should have known, about the causal link between his injury - - the attorney fees he paid to defend himself in the Maryland litigation - - and Scholar's negligence.  Perry correctly notes that this factual dispute precludes resolving this pre-discovery motion to dismiss

---

[3] However, in Knight the issue was "whether a cause of action for malpractice accrues only after an appeal is exhausted," an issue not relevant in the instant case.  See De May v. Moore & Bruce, LLP, 584 F. Supp. 2d 170, 183 (D.D.C. 2008) (stating that Knight "merely rejected the exhaustion of appeals rule," which was not at issue in that case).  Furthermore, the opinion in Knight pertained to a cause of action for malpractice regarding the formation of a will that was invalidated by a court judgment more than three years before the plaintiff brought his malpractice action.  Knight, 553 A.2d at 1233.  Here, Perry has brought this action well within three years of the order issued by the lower court exonerating him.

where the complaint on its face does not conclusively establish whether the complaint is time-barred.

## CONCLUSION AND ORDER

Perry has sufficiently alleged a claim of tortious involvement in litigation, and there is a factual dispute about when Perry knew, or by the exercise of reasonable diligence should have known, that Scholar's negligence caused his involvement in the Maryland litigation.  Therefore, it is hereby

ORDERED that the defendant's motion [5] to dismiss be, and hereby is, DENIED.

SIGNED this 19th day of March, 2010.


                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge